## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

MATTHEW MAROTTO, on behalf of himself,
all others similarly situated,
and the general public,

                       Plaintiff,

  -against-


KELLOGG COMPANY,
KELLOGG USA INC.,
KELLOGG SALES COMPANY,
PRINGLES LLC, and
PRINGLES MANUFACTURING CO.,

                       Defendants.

Civil Case No:


CLASS ACTION


**COMPLAINT FOR
VIOLATIONS OF NEW
YORK'S UNFAIR AND
DECEPTION BUSINESS
PRACTICES LAW,
FALSE ADVERTISING
LAW, NEGLIGENT AND
INTENTIONAL
MISREPRESENTATION,
RESTITUTION, AND
BREACH OF EXPRESS &
IMPLIED WARRANTIES**


Plaintiff Demands a
Trial by Jury

---------------------------------------------------------X

Plaintiff MATTHEW MAROTTO, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby brings this action against KELLOGG COMPANY, KELLOGG USA INC., KELLOGG SALES COMPANY, PRINGLES LLC, and PRINGLES MANUFACTURING CO. and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief including the investigation of their counsel:

## INTRODUCTION

1. Defendants sell "Pringles® Salt and Vinegar chips" (hereinafter referred to as the "Product"). The front label of the Product depicts a chalkboard sign showing the words "Salt & Vinegar," a pile of salt, and two bottles, which impliedly contain vinegar. An image of the chips lies below the sign, while salt is being sprinkled on and around the chips. The image gives consumers the impression of freshly baked chips, with the salt flavoring coming from the sprinkled salt and the vinegar flavoring coming from the bottles.

2. Plaintiff, and all others similarly situated, who are reasonable consumers, reasonably assume that the product contains real salt and vinegar – not artificial ingredients.

3. Consumers' expectation is bolstered by the fact that the Product's back label contains the words: "**NO ARTIFICIAL FLAVORS.**"

4. Upon information and belief, however, Defendants do use artificial ingredients in their "Salt and Vinegar" chips, and thus unlawfully and purposefully mislead consumers into purchasing the Product.

## INTRADISTRICT ASSIGNMENT

5. Pursuant to Local Civil Rule 50.1(d)(2)(b)(1), this action is properly assigned to the Manhattan Courthouse, because, as further set forth herein, a substantial part of the events or omissions giving rise to the claims occurred in New York County.

## THE PARTIES

6. At all times material, Plaintiff MATTHEW MAROTTO is a resident of Hudson County, New Jersey.

7. At all times material, KELLOGG COMPANY is a Delaware corporation with its principal place of business at One Kellogg Square, Battle Creek, Michigan.

8. At all times material, KELLOGG USA INC. is a Michigan profit corporation with its principal place of business at One Kellogg Square, Battle Creek, Michigan.

9. At all times material, KELLOGG SALES COMPANY is a Delaware corporation with its principal place of business at One Kellogg Square, Battle Creek, Michigan.

10. At all times material, PRINGLES LLC is a Delaware limited liability company, with its principal place of business at One Kellogg Square, Battle Creek, Michigan.

11. At all times material, PRINGLES MANUFACTURING CO. is a Delaware corporation with its principal place of business at One Kellogg Square, Battle Creek, Michigan. The Product's packaging identifies PRINGLES MANUFACTURING CO. as the primary manufacturer of the Product.

12. The official Kellogg Company website and other sources, including SEC filings, identify the Pringles brand, including the Product, as owned by and belonging to Kellogg's, so that Kellogg's, at minimum, is the apparent manufacturer.

13. The above named corporate entities (hereinafter referred to collectively as "KELLOGG") jointly produce, manufacture, create, advertise, and otherwise assist in the creation and marketing of the Product.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, at least one member of the class of plaintiffs is a citizen of a State different from KELLOGG. In addition, more than two-thirds of the

members of the class reside in states other than the state in which Defendants are citizens

and in which this case is filed, and therefore any exceptions to jurisdiction under 28

U.S.C. § 1332(d) do not apply.

15. The Court has personal jurisdiction over KELLOGG because KELLOGG transacts

business in New York. Specifically, KELLOGG advertised, marketed, distributed,

offered for sale, and sold the Product to consumers in New York and the United States,

transacting business in New York County, in New York, and throughout the United

States, including without limitation through extensive on-the-shelf presence in New York

County, and online marketing intended to reach consumers in New York County.

Moreover, KELLOGG has sufficient purposeful, systematic, and continuous minimum

contacts with the various states of the United States, including New York, and has

sufficiently availed itself of the markets of various states of the United States, including

New York, to render the exercise of personal jurisdiction by this Court permissible.

16. Venue is proper in this Southern District of New York pursuant to 28 U.S.C. § 1391(b)

and (c), because a substantial portion of the acts forming the basis for the claims occurred

in this district, and because KELLOGG transacts substantial business generally in this

district.

## **FACTUAL ALLEGATIONS**

### **Defendants Fail to Disclose That Their Product Is Artificially Flavored**

17. The Product's front-label center panel identifies it as "Pringles® Salt and Vinegar

Flavored" on a stylized representation of a blackboard resembling a neighborhood

restaurant or street-corner deli menu. At the bottom of the front-of-package label appear

the words "Potato Crisps." The package's front label does not state whether the Product

is naturally or artificially flavored.

18. The Product's back label, below the Product's ingredients, states "NO ARTIFICIAL

FLAVORS."

19. The Product's ingredient list, however, shows that ingredients include "sodium diacetate,

vinegar, dextrose, [and] malic acid…" A true and correct copy of the Product's front and

back labeling is provided below:




20. The Product does, in fact, contain actual vinegar—but in an amount too small to flavor the Product.

21. Defendants instead add two artificial flavorings—sodium diacetate and malic acid—to simulate and reinforce the Product's characteristic vinegar flavor.

22. The Product's label violates Federal and New York State law in a variety of ways.

23. First, because the Product contains additional flavoring ingredients that overwhelm the flavor of the small amount of *actual* vinegar in the seasoning, the front label is required by law to disclose those additional flavors rather than misleadingly claim that the Product is "Vinegar" flavored.  21 CFR 101.22.

24. Additionally, the Product's proclamation of "**NO ARTIFICIAL FLAVORS**" is patently false and—at a bare minimum—misleading:



25. Second, the Product's ingredient list violates Federal and State law because it misleadingly identifies the malic acid flavoring ingredient only as a generic "malic acid" instead of using the specific, non-generic name of the ingredient.  21 CFR 101.4(a)(l).

26. Third, and far more deceptive to consumers, the Product's label completely and unlawfully fails to disclose that the Product contains two artificial flavors.

27. In fact, the Product's back-label states that the Product contains "NO ARTIFICIAL FLAVORS," while the Product's ingredient list identifies two flavoring ingredients as "**sodium diacetate**" and "**malic acid**."

28. The compound sodium diacetate, as a crystalline salt of acetic acid, may occur in nature, but the sodium diacetate in Defendants' Product is a synthetic industrial chemical manufactured in a chemical refinery from carbon monoxide and industrial methanol using a metal-catalyzed carbonylation process.

29. The U.S. Food, Drug, and Cosmetic Act ("FDCA"), defines natural flavorings as only those derived from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 CFR 101.22 (a).

30. Any flavoring material that does not meet the definition of a natural flavor is an artificial flavor. *Id.*

31. Neither the methanol nor the carbon monoxide used to manufacture the sodium diacetate flavoring ingredient is "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." *Id.*[1]

---

[1] Until the 1920s, methanol was produced by the fermentation of wood; it is currently produced from synthesis gases in chemical refineries.

32. The sodium diacetate is therefore an artificial flavor under Federal Law.

33. Thus, Defendants' Product is false and misleading in that it claims to have "NO ARTIFICIAL FLAVORS."

34. The ingredient identified on the Product label as "malic acid" is similarly an artificial flavor under Federal Law.

35. There is a compound found in nature that is sometimes referred to informally as malic acid.

36. That, however, is not the compound that Defendants put in the Product.

37. The natural form of malic acid is correctly and specifically identified as "L-malic acid." L-malic acid occurs naturally in various types of fruits and vegetables.

38. Defendants, however, instead flavor the Product with an industrial chemical called d-1-malic acid, in the form of a racemic mixture of d- and l-isomers.[2] This kind of "malic acid" is not naturally-occurring; it is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

39. Currently, under the Generally Recognized as Safe ("GRAS") regulations, either type of malic acid can be used as a flavoring agent in food products. Both provide a tart or sour "fruity" flavor. According to The Chemical Company, an industrial malic acid supplier, d-1-malic acid is added to food products to deliver a "persistent sour" flavor.[3]

40. Although the malic acid that is placed in the Product to simulate the sour flavor of vinegar is the d-1-malic acid—the artificial petrochemical—Defendants pretend

---

[2] D-malic acid is also called (R)-(+)-2-Hydroxysuccinic acid or d-hydroxybutanedioic acid.
[3] https://thechemco.com/chemical/malic-acid/ (last visited March 19, 2018).

otherwise, conflating the natural and artificial flavorings, misbranding the Product, and deceiving consumers.

41. Defendants clearly label their product as "NO ARTIFICIAL FLAVORS," thereby misleading reasonable consumers into purchasing the Product.

42. U.S. FDA requires that a food label accurately describe the nature of the food product and the ingredients that create its characterizing flavors. *See* 21 C.P.R. 102.5(a).

43. If the front label of a food product identifies a recognizable primary flavor, that flavor is referred to as a "characterizing flavor" of the product.

44. FDA regulations establish that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor." 21 C.F.R. 101.22(i).

45. "Vinegar" is a primary recognizable flavor identified on the Product's front label and is therefore a characterizing flavor for the Product.

46. If a food product's characterizing flavors are not created exclusively by the ingredients identified on the label, the product's front label must state that the product's flavor was simulated or reinforced with additional flavorings, either natural or artificial. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be labeled "artificially flavored." *Id.* 21 C.P.R. 101.22(i)(3)-(4).

47. A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) ... when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer

acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

48. Such statement must be on display on any qualified products.

49. Defendants' conduct also violates 21 C.F.R. 101.22(c), which requires all foods containing artificial flavoring to include: "A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."

50. Because Defendants concealed the above mentioned fact, Plaintiff and the putative Class were unaware that the Product contained artificial flavoring when they purchased it.

51. When purchasing the Product, Plaintiff was seeking a product of particular qualities—one that was flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.[4]

52. Defendants were aware that consumers like Plaintiff and the putative Class prefer natural food products to those that are artificially flavored.

53. Defendants deceived Plaintiff and the Class into purchasing the Product by unlawfully concealing that it was artificially flavored.

54. Plaintiff lost money as a result. Plaintiff would not have purchased the Product in the absence of Defendants' misrepresentations and omissions. Had Defendants not violated New York and Federal law, Plaintiff would not have been injured.

55. Because the Product is illegal to sell, as is, in New York, it is valueless.

---

[4] "American adults indicate that the preference for natural is substantial, and stronger for foods…" *See Generally* Rozin, P., Spranca, M., Krieger, Z., Neuhaus, R., Surillo, D., Swerdlin, A., et al. (2004). Preference for Natural: Instrumental and ideational/moral motivations, and the contrast between foods and medicines. *Appetite,* 43, 147e154. [https://cpb-us-w2.wpmucdn.com/web.sas.upenn.edu/dist/7/206/files/2016/09/natcinapp221App2004-10wrba4.pdf (last visited April 16, 2018).

56. Even if it had been legal to sell, the Product was worth less than what Plaintiff paid for it. Plaintiff and putative Class Members would not have paid as much as they had for the Product absent Defendants' false and misleading statements and omissions.

**Defendants' Competitors Label Their Products Lawfully**

57. Defendants not only deceive consumers, but also gain an unfair commercial advantage in the marketplace by labeling the Product deceptively.

58. Manufacturers of competing snack products label their products lawfully.

59. Wise Potato Chips, for example, accurately labels its flavored "Salt & Vinegar" chips as "Artificially Flavored."

60. Other competing manufacturers, offering products whose labels suggest, just as Defendants do, that their products are naturally flavored, truly are flavored only with natural ingredients.

61. Defendants, however, conceal their use of artificial flavoring, deceiving consumers, illegally cutting costs, unjustly increasing profits, and competing unfairly and unlawfully in the marketplace, thereby injuring their law-abiding competitors as well as consumers.

62. Defendants' conduct injures competing manufacturers that do not engage in the same illegal behavior. These manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars. Defendants' competitors do so lawfully. Defendants do not.

**Plaintiff's Purchases of the Product**

63. Plaintiff MATTHEW MAROTTO purchased the Product in New York during the Class Period defined herein.

64. Plaintiff purchased the Product multiple times annually since at least 2008 or earlier, including during 2018.

65. The average U.S. retail price for the Product in 2016 was $2.46 per package, including multiple-unit sales at discount retail outlets such as Walmart and Costco. The price of the Product in 2018, in New York City, was $2.99.

66. Plaintiff first discovered Defendants' unlawful acts described herein in early March of 2018, when he learned the Product's characterizing flavor was deceptively created or reinforced using artificial flavoring, even though Defendants failed to disclose that fact on the Product's label and promised consumers there were "NO ARTIFICIAL FLAVORS," used in the Product.

67. Plaintiff was deceived by, and justifiably relied upon, the Product's deceptive labeling, and specifically the omission of the fact that it contained artificial flavorings. Plaintiff purchased the Product believing it was naturally-flavored, based on the Product's deceptive labeling and failure to disclose that it was artificially flavored.

68. Plaintiff, as a reasonable consumer, is not required to subject consumer food products to laboratory analysis, to scrutinize the back of a label to discover that the product's front label is false and misleading, or to search the label for information that federal regulations require be displayed prominently on the front. Defendants, but not Plaintiff, knew or should have known that this labeling was in violation of federal regulations and state law.

69. Because Plaintiff reasonably assumed the Product to be free of artificial flavoring based on its label, when it was not, Plaintiff did not receive the benefit of his purchases. Instead of receiving the benefit of products free of artificial flavoring, Plaintiff and each member

of the Class received a Product that was unlawfully labeled so as to deceive consumers into believing that it is exclusively naturally flavored and contains no artificial flavoring, in violation of federal and state labeling regulations.

70. Plaintiff intends to, desires to, and will purchase the Product again when he can do so with the assurance that the Product's label, which indicates that the Product contains "NO ARTIFICIAL FLAVORS," is lawful and consistent with the Product's ingredients.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

**Delayed Discovery**

71. Plaintiff did not discover that Defendants' labeling of the Product was false and misleading until March of 2018, when he learned the Product contained artificial flavoring.

72. Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in his purchase and consumption of the Product. Nevertheless, he would not have been able to discover Defendants' deceptive practices, and lacked the means to discover them, given that, like nearly all consumers, he relies on and is entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendants' labeling practices and non-disclosures—in particular, failing to identify the artificial flavor in the ingredient list, or to disclose that the Product contains artificial flavoring, or to accurately identify the kind of malic acid that Defendants put in the Product—impeded Plaintiff's and Class Members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period. Thus, the delayed discovery exception postpones accrual of the limitations period for Plaintiff and all members of the putative Class.

**Fraudulent Concealment**

73. Additionally, or in the alternative, Defendants were constructively and actually aware that the Product contains artificial flavoring. Nevertheless, Defendants continued to sell the Product without informing consumers of such artificial flavoring on the Product's labeling. Therefore, at all relevant times, Defendants had a duty to inform consumers that the Product contains artificial flavoring, but still knowingly concealed that fact from Plaintiff and members of the Class. Because Defendants actively concealed their illegal conduct, preventing Plaintiff and the Class from discovering their violations of state law, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

**Continuing Violation**

74. Because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statutes of limitations for Plaintiff and all members of the Class until Defendants' unlawful advertising and labeling is corrected.

## CLASS ACTION ALLEGATIONS

75. Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class comprised of all persons in New York who, who purchased the Product for personal or household use, and not for resale.

76. During the Class Period, the Product unlawfully contained undisclosed artificial flavors—including d-malic acid or d-l-malic acid and sodium diacetate—and was otherwise improperly labeled. Defendants failed to label the Product as required by New York State.

77. The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation.

78. Plaintiff nevertheless reserves the right to divide into subclasses, expand, narrow, or otherwise modify the class definition prior to (or as part of) filing a motion for class certification.

79. The proposed Class is numerous. The Product is offered for sale at over two thousand supermarkets in New York. The Class numbers, at a minimum, are in the tens of thousands. Individual joinder of the Class Members in this action is impractical. Addressing Class Members' claims through a class action will benefit Class Members, the parties, and the courts.

80. The members in the proposed class and subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court. Fed. R. Civ. P. 23(a)(1).

81. Plaintiff's claims are typical of, and are not antagonistic to, the claims of other Class Members. Plaintiff and Class Members all purchased the Product at retail locations, after being exposed to the false, misleading, and unlawful Product labeling at the point of purchase, were deceived by the false and deceptive labeling, and lost money as a result.

82. A class action is superior to any other means for adjudication of the Class Members' claims. Each Class Member's claim is modest, based on the Product's retail purchase price which is generally under $5.00. It would be impractical for individual Class Members to bring individual lawsuits to vindicate their claims.

83. Because Defendants' misrepresentations were made on the label of the Product itself, all Class Members, including Plaintiff, were exposed to, and continue to be exposed to, the omissions and affirmative misrepresentations. If this action is not brought as a class action, Defendants will continue to deceive consumers and violate New York State and Federal Law with impunity.

84. The Class Representative—Plaintiff MATTHEW MAROTTO—is an adequate representative of the Class, as he seeks relief for the Class, his interests do not conflict with the interests of the Class, and he has no interest antagonistic to those of other Class Members. Plaintiff has retained counsel who are competent in the prosecution of complex consumer fraud and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.

85. There are questions of law and fact common to the class, Fed. R. Civ. P. 23(a)(2), which Plaintiff may seek to litigate on an individual basis pursuant to Fed. R. Civ. P. 23(c)(4), including without limitation:

   a. Whether Defendants failed to disclose the presence of the artificial flavoring ingredient d-l-malic acid in the Product

   b. Whether Defendants failed to disclose the presence of the artificial flavoring ingredient sodium diacetate in the Product;

   c. Whether the Product was misbranded under New York Law;

   d. Whether the statute of limitations should be tolled on behalf of the Class;

   e. Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and/or injunctive relief; and

     f.   Whether the Class Members are entitled to any such further relief as the Court deems appropriate.

86. Thus, common questions predominate over individual issues of law or fact.

87. Further, Defendants have acted on grounds applicable to the entire Class, making final injunctive relief or equitable or declaratory relief appropriate for the Class as a whole.

88. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and may be appropriate for certification "with respect to particular issues" under Rule 23(c)(4).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### UNFAIR AND DECEPTIVE BUSINESS PRACTICES, N.Y. GEN. BUS. L. § 349

89. Plaintiff incorporates the preceding allegations of the Complaint as if fully set forth herein.

90. Defendants' conduct constitutes deceptive acts or practices and/or false advertising in the conduct of business, trade or commerce or on the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

91. As alleged herein, by advertising, marketing, distributing, and selling the Product to Plaintiff and other class members with false and misleading claims and representations, Defendants engaged in, and continue to engage in, deceptive acts and practices.

92. As alleged herein, by misbranding the Product, Defendants engaged in, and continue to engage in, deceptive acts and practices.

93. Defendants' conduct was materially misleading to Plaintiff and the Class.

94. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was consumer oriented.

95. As a direct and proximate result of Defendants' violation of N.Y. Gen. Bus. L. § 349, Plaintiff and the Class were injured and suffered damages.

96. The injuries to Plaintiff and the Class were foreseeable to Defendants and, thus Defendants' actions were unconscionable and unreasonable.

97. Defendants are liable for damages sustained by Plaintiff and the Class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349.

98. Furthermore, pursuant to N.Y. Gen. Bus. L. § 349 (h), "In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

99. Plaintiff further makes a claim for all of the above damages pursuant to N.Y. Gen. Bus. L. § 349 (h).

100.    Pursuant to N.Y. Gen. Bus. L. § 349(h), Plaintiff and the Class seek an Order enjoining Defendants from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

## SECOND CAUSE OF ACTION
## FALSE ADVERTISING, N.Y. GEN. BUS. L. § 350

101. Plaintiff incorporates the preceding allegations of the Complaint as if fully set forth herein.

102. Defendants have engaged and are engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

103. Defendants' practices, as described herein, were at all times during the Class Period, and continue to be, unlawful under, *inter alia*, FDA regulations.

104. Defendants' use of the phrase "NO ARTIFICIAL FLAVORS," on their label is deceptive in light of the fact that Defendants use artificial means to create two ingredients contained in the Product. Defendants knew, or reasonably should have known, that marketing and labeling the Product with "NO ARTIFICIAL FLAVORS," was false and misleading.

105. Likewise, Defendants' use of salt and vinegar images on the front label deceived Plaintiff and Class Members into reasonably assuming that the Product contained actual, natural salt and vinegar.

106. The Product fails to disclose that it contains synthetic artificial flavoring in violation of N.Y. Gen. Bus. L. § 350 and, *inter alia,* FDA regulations.

107. The d-l-malic acid is a flavoring material included in the Product to create, simulate, or reinforce the characterizing "Salt & Vinegar" flavor.

108. The d-l-malic acid in the Product is not derived from a natural material as defined in 21 CFR 101.22 and is therefore deceptively marketed to New York consumers.

109. Likewise, the sodium diacetate is a flavoring material included in the Product to create, simulate, or reinforce the characterizing "Salt & Vinegar" flavor.

110. The sodium diacetate in the Product is not derived from a natural material as defined in 21 CFR 101.22 and is therefore deceptively marketed to New York consumers.

111. Defendants fail to inform consumers of the presence of either artificial flavor in their Product.

112. As a result of Defendants' false advertising, Plaintiff and the Class have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless Defendants are permanently enjoined by this Court.

113. Plaintiff and the Class reserve the right to allege other violations of law that constitute other unlawful business acts or practices.

**THIRD CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**

114. Plaintiff incorporates the preceding allegations of the Complaint as if fully set forth herein.

115. Defendants misrepresented to Plaintiff and the Class the characteristics and ingredients used in the Product, and omitted material facts concerning the true nature of the Product.

116. Defendants owed a duty to Plaintiff and the Class to exercise reasonable care when issuing statements or disclosures regarding the Product's characteristics and benefits.

117. Defendants' statements and disclosures regarding the characteristics and ingredients of the Product were likely to deceive Plaintiff and the Class.

118. Defendants' omissions of material information were likely to deceive Plaintiff and the Class in that, had Defendants not omitted such material information, the disclosure of that information would have resulted in Plaintiff and the Class acting differently, for example, by not purchasing the Product.

119. Defendants' claims have influenced or are likely to influence future decisions of consumers and the buying public. Plaintiff and the Class, by purchasing the Product, reasonably acted in reliance on the truth of Defendants' representations, and the absence of the material information that Defendant deceptively omitted.

120. As a direct and proximate result of Plaintiff's and the Class's reliance upon the representations made by Defendants, Plaintiff and the Class have sustained damages and ascertainable loss.

## FOURTH CAUSE OF ACTION - INTENTIONAL MISREPRESENTATION/FRAUD N.Y. C.P.L.R. 213

121. Plaintiff incorporates the preceding allegations of the Complaint as if fully set forth herein.

122. Defendants have engaged and are engaging in intentional misrepresentation resulting in fraud in violation of N.Y. C.P.L.R. 213.

123. Defendants represented to the public, including to Plaintiff and the Class, that the Product would contain actual, naturally derived salt and vinegar.

124. Defendants' representations were false and misleading.

125. At the time Defendants' made statements or representations regarding the nature and qualities of the Product, Defendants knew that the statements and representations were false and misleading.

126. Defendants made the misrepresentations alleged herein with the intention of inducing and persuading Plaintiff and the Class to purchase the Product.

127. Defendants further withheld and omitted material information about the Product with the intention of inducing and persuading Plaintiff and the Class to purchase the Product.

128. Plaintiff and the Class, by purchasing the Product, reasonably relied on Defendants' false and misleading misrepresentations, and on the absence of the material information that Defendants deceptively omitted.

129. As a direct and proximate result of Defendants' intentional misrepresentations and deceptive omissions, Plaintiff and the Class were induced to pay, and pay a premium for, the Product.

130. Plaintiff and the Class were damaged through their purchase and use of the Product.

131. Plaintiff's and the Class's reliance on Defendants' statements and representations of the nature and characteristics of the Product was reasonable.

132. Defendants are guilty of malice, oppression, and fraud, and Plaintiff and the Class are therefore entitled to recover exemplary or punitive damages.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

133. Plaintiff incorporates the preceding allegations of the Complaint as if fully set forth herein.

134. Through the label of Product, Defendants made affirmations of fact or promises, and made descriptions of goods, that formed part of the basis of the bargain, in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements.

135. Specifically, Defendants made statements that the Product contained "NO ARTIFICIAL FLAVOR."

136. Specifically, Defendants made statements on the front-label of the Product, using imagery of actual salt and vinegar, implying that the Product contained actual salt and vinegar.

137. Defendants breached their express warranties by selling products that contained artificial flavors.

138. That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class Members paid for the Product.

139. As a result, Plaintiff seeks, on behalf of himself and other Class Members, actual damages arising as a result of Defendants' breach of express warranty.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

140. Plaintiff incorporates the preceding allegations of the Complaint as if fully set forth herein.

141. Defendants, through their acts and omissions set forth herein, in the sale, marketing and promotion of the Product, made representations to Plaintiff and the Class that the Product would not contain artificial flavors and/or ingredients.

142. Defendants are merchants with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

143. However, Defendants breached that implied warranty in that the Product does in fact contain artificial flavors, as set forth in detail herein.

144. As an actual and proximate result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

145. As a result, Plaintiff seeks, on behalf of himself and other Class Members, actual damages arising as a result of Defendants' breaches of implied warranty.

## SEVENTH CAUSE OF ACTION RESTITUTION

146. Plaintiff incorporates the preceding allegations of the Complaint as if fully set forth herein.

147. By virtue of deceptive and unlawful business practices, Defendants charged and received payment for the Product.

148. Defendants should not be permitted to retain those payments in equity and good conscience, as those payments were obtained in contravention of the law. To permit Defendants to retain those payments would wrongfully confer a benefit upon Defendants at the expense of Plaintiff and the Class.

149. Under the circumstances, it would be inequitable for Defendants to retain these ill-gotten benefits, and therefore restitution to Plaintiff and the Class is warranted.

## PRAYER FOR RELIEF

150. Wherefore, Plaintiff, on behalf of himself  and the Class, prays for judgment against Defendants, jointly and severally, as to each and every cause of action, and respectfully requests this Court to grant the following remedies:

   a. An Order certifying this action as a class action, appointing Plaintiff as Class Representative, appointing Plaintiff's counsel as Class Counsel, and requiring Defendants to bear the cost of class notice;

   b. An Order enjoining Defendants from marketing the Product in a deceptive manner, including, but not limited to, enjoining Defendants from using the phrase "NO ARTIFICIAL FLAVOR;"

c. An Order requiring Defendants to engage in a corrective advertising campaign;

d. An Order requiring Defendants to pay restitution to restore to Plaintiff and the Class all monetary damages that were caused by any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the statutes cited herein;

e. An Order requiring Defendants to pay all statutory, compensatory, and punitive damages permitted under the causes of action alleged herein;

f. An Order requiring Defendants to disgorge or return all monies, revenues, profits, or other unjust enrichment obtained by means of any wrongful or unlawful act or practice;

g. Pre- and post-judgment interest;

h. Costs, expenses, and reasonable attorneys' fees; and

i. Any other and further relief as may later be requested, or which the Court deems necessary, just, or proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: April 20, 2018                         /s/ Alexander G. Cabeceiras

                                              **DEREK SMITH LAW GROUP, PLLC**
                                              DEREK T. SMITH (DS1747)
                                              *dtslaws@msn.com*
                                              ALEXANDER G. CABECEIRAS (AC1557)
                                              *alexc@dereksmithlaw.com*
                                              1 Penn Plaza, Suite 4905

New York, New York 10119
Phone: (212) 587-0760

**SACKS WESTON DIAMOND, LLC**
JOHN WESTON (*phv to be filed*)
*jweston@sackslaw.com*
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
Phone: (215) 764-3008

***Counsel for Plaintiff and the Proposed Class***