UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MATTHEW MAROTTO on behalf of himself, all
others similarly situated, and the general public,

                                Plaintiff,

           -against-

KELLOGG COMPANY, KELLOGG USA INC.,
KELLOGG SALES COMPANY, PRINGLES
LLC, and PRINGLES MANUFACTURING CO.,

                                Defendants.
------------------------------------------------------------ X

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

18 Civ. 3545 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiff Matthew Marotto, a chef with training in molecular gastronomy, filed this action against Defendants Kellogg Company, Kellogg USA Inc., Kellogg Sales Company, Pringles, LLC, and Pringles Manufacturing Co., alleging that Defendants, makers and marketers of Pringles Salt and Vinegar crisps (or, "Pringles"), label Pringles packaging in a way that misled Marotto and other New York consumers into wrongly believing that Pringles contain no artificial ingredients. The Complaint seeks relief under, *inter alia*, New York deceptive business practices law, N.Y. Gen. Bus. L. § 349, New York false advertising law, *id.* at § 350, and various common law theories. Plaintiff now moves to certify a class of all persons who bought Pringles in New York on or after April 1, 2012. *See* ECF No. 39, at 1. Plaintiff's motion is denied.

**Factual Background**

       Defendants make and market Pringles, the familiar potato crisp snack that comes in a tubular container featuring a mustachioed mascot. *See* Compl., ECF No. 1, at ¶¶ 1, 17-19.[1]

---

[1] The facts presented herein derive from the Complaint, testimony given by Marotto at his October 21, 2019 deposition, and sworn declarations submitted by the parties.

Pringles come in several flavors, including the flavor at issue in this matter: "Salt & Vinegar."[2] *See id.* Pringles cost under $3.00 per can. *See id.* at ¶ 65.

Between April 2012 and the present—the class period proposed by Marotto, *see* ECF No. 39, at ¶ 1—Pringles were sold under twenty different labels. *See* ECF No. 49, at ¶ 2. Of these twenty label iterations, four include the text: "No Artificial Flavors":



*See id.* at ¶¶ 3-5 (square around the language added); ECF No. 49-1; ECF No. 49-2. The parties agree that every version of Pringles labeling lists all of the product's ingredients.

Plaintiff Marotto attended the French Culinary Institute ("FCI") in Manhattan. Marotto Dep., ECF No. 49-3, at 16:14-15. As he stated at his deposition, FCI is the "number one culinary institute in the United States." *Id.* at 16:15-16. Marotto graduated from FCI with a focus in "classic pastry arts," and in furtherance of his studies completed courses in "molecular gastronomy," a subject which involves understanding, *inter alia*, the role of chemical processes

---

[2] My references hereinafter to "Pringles" are references to "Pringles Salt & Vinegar chips," unless I note otherwise.

in cuisine. *Id.* at 16:19-17:23. During his tutelage at FCI, Marotto had the opportunity to train under distinguished chef-specialists in molecular gastronomy. *See id.* at 18:10-17.

Since graduating from FCI, Marotto has competed on televised cooking shows, *id.* at 18:18-20; worked as an executive pastry chef, *id.* at 18:15-17; been employed in research and development for a number of culinary businesses, *id.* at 19:23-20:2; and started a "cryogenic ice cream" company that specializes in using liquid nitrogen to rapidly freeze ice cream, *id.* at 32:19; *see* https://www.cryocreamcorp.com (last visited Nov. 27, 2019) ("A true avant-garde chef, Matt [Marotto] is renowned for his mastery of molecular gastronomy."). Marotto explained in his testimony that he "wouldn't have been able to be employed unless [he] had an extreme amount of knowledge" in nutrition and molecular gastronomy. *Id.* at 20:7-9.

Marotto testified to having eaten Pringles of various varieties "more or less continuously" since childhood. *Id.* at 53:17-18. During most of the ten years preceding this action, Marotto stated that he became partial to the "Salt & Vinegar" flavor, buying Pringles of this type every two-to-three weeks, *see id.* at 55:4-15. Marotto testified at some length about the importance to him—particularly in the couple of years immediately predating this action—of purchasing only natural, high-quality ingredients. He stated that "[p]rice isn't really a concern" to him, and that he does not "really care about money," so long as he has "something that's decent or it's good quality." *Id.* 44:24-45:3, 51:12-13. In the interest of eating "exclusively organic food," Marotto testified that he never buys packaged food of any kind, and "even make[s] [his] own pasta." *Id.* at 46:11-13, 51:19-52:3.

Unfortunately, for Marotto, once he popped, the fun did, ultimately, stop. In early March 2018, Marotto was told by his wife—who, as discussed *infra*, is an attorney at one of the law firms seeking to represent the instant putative class, *see id.* at 31:22-32:5; ECF No. 39—that

3

Pringles contain artificial flavors despite the label saying "No Artificial Flavors." Compl. at ¶ 66; Marotto Dep. at 60:4-24. The Complaint identifies the two offending artificial flavors as "sodium diacetate" and "malic acid." Compl. at ¶ 21. As is disclosed on all versions of its labeling, Pringles are made up of "2% or less" of these two flavorings. ECF No. 49, at ¶ 6; *see* ECF Nos 49-1, 49-2. Marotto filed suit shortly thereafter.

## Procedural History

In April 2018, Marotto filed a class action on behalf of Pringles consumers, alleging that Defendants falsely indicated through Pringles' labeling that the chips contain no artificial flavors, when in fact the chips do contain such flavors. *See* Compl. at ¶ 4. Marotto brought claims for deceptive trade practices, N.Y. Gen. Bus. L. § 349; false advertising, N.Y. Gen. Bus. L. § 350; negligent misrepresentation; intentional misrepresentation; breach of express warranty; and breach of the implied warranty of merchantability. In November 2018, I denied Defendants' motions to transfer or stay the case, but granted their motion to dismiss Marotto's claim for breach of implied warranty, and held separately that Marotto lacks standing to pursue injunctive relief. *See generally* ECF No. 29.

In June 2019, Marotto moved to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3). *See* ECF No. 39. Marotto's proposed class is defined in relevant part as follows: "All persons who purchased Pringles Salt and Vinegar chips . . . in the state of New York, for personal or household use, and not for resale, on or after April 1, 2012." *Id.* at ¶ 1. Defendants filed a memorandum opposing certification. *See* ECF No. 48.

## Discussion

Under Federal Rule of Civil Procedure 23(a), "the prerequisites for maintaining a class action are numerosity, commonality, typicality, and adequacy of representation." *Ruffo v.*

4

*Adidas America Inc.*, No. 15-cv-5989, 2016 WL 4581344, at *1 (S.D.N.Y. Sept. 2, 2016). If an action "satisfies those prerequisites, it may be certified if it also satisfies one of the three parts of Rule 23(b)." *Id.* Rule 23(b)(3), under which Plaintiff here seeks certification, provides that a

> class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that [1] questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed R. Civ. P. 23(b)(3). As a "'general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Weiner v. Snapple Beverage Corp.*, No. 07-cv-8742, 2010 WL 3119452, at *5 (S.D.N.Y. Aug. 5, 2010) (quoting *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010)). This entails asking whether the issues raised are "subject to generalized proof" or "only to individualized proof." *Brown*, 609 F.3d at 483 (quotation marks omitted).

Contrary to Marotto's assertion that evaluation of class certification motions is restricted to the contents of the complaint,[3] well-worn precedent provides that

> [i]n evaluating whether Rule 23's requirements are met, the Court conducts a "rigorous analysis," probing whether the plaintiffs have "in fact" proven each of the requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). . . . The Court must look "behind the pleadings," even if such an inquiry "overlap[s] with the merits of the plaintiffs' underlying claim," and determine if the plaintiffs have demonstrated the Rule 23 requirements by a preponderance of the evidence. *Id.*

*Ruffo*, 2016 WL 4581344, at *2; *see Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) ("In evaluating a motion for class certification, the district court . . . must resolve material factual

---

[3] For example, Marotto quotes *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) for the proposition that "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Pl. Br., ECF No. 39, at 3. But recently, the Supreme Court flagged precisely the same language from *Eisen* and clarified that while this statement is "sometimes mistakenly cited to the contrary," Rule 23 analysis will often entail examining the merits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 n.6 (2011).

5

disputes relevant to each Rule 23 requirement."); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008) (recognizing that district courts may consider "affidavits, documents, or testimony") (quotation marks omitted).

Marotto's arguments for typicality and adequacy are, at best, dubious. For instance, common sense alone makes clear that a professional pastry chef, with years of training in molecular gastronomy at an elite culinary school, for whom (in his own words) price is of no concern when grocery shopping, and is so averse to the purchase of packaged food that he makes his own rigatoni, is neither the typical Pringles purchaser nor typical in his zealous avoidance of artificial ingredients. *See* Marotto Dep. at 16-21, 44-46. Adequacy is an even more awkward fit, given Marotto's testimony that, after consuming Pringles "more or less continuously" since his childhood, he was first told that Pringles contain artificial ingredients by his wife, an attorney at one of the law firms seeking to represent the putative class. *See id.* at 31-32, 60-61. When asked how she became aware of Pringles using artificial flavors, Marotto answered, "I assume she found out through work or something." *Id.* at 61:5-6. Whatever the true reason for the genesis of this lawsuit, Marotto would without a doubt be uniquely susceptible to questions as to whether this suit is brought for his own benefit, or for that of his wife's firm.

However, I need not address those arguments, because Marotto has plainly failed to satisfy the predominance requirement of Rule 23(b)(3). *See, e.g., Ruffo*, 2016 WL 4581344, at *2; *Weiner*, 2010 WL 3119452, at *5. First, while common issues may predominate if a product and its labeling "remain[] constant and [are] uniform between customers," this is not so when "it is not demonstrated that all members of the class saw the same advertisements . . . and not all the advertisements contained the alleged misrepresentations." *Goldemberg v. Johnson & Johnson*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016) (quotation marks omitted); *see Ault v. J.M. Smucker Co.*,

6

310 F.R.D. 59, 65 (S.D.N.Y. 2015) ("Courts across the country have expressed doubt that a class is ascertainable in cases . . . where only certain products on the market during the class period contain the allegedly misleading labels."). Marotto's extant claims are predicated upon class members having been misled by, or at least having *seen*, the "No Artificial Flavors" label. *See Wurtzburger v. Kentucky Fried Chicken*, No. 16-cv-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) ("If Plaintiff did not see the advertisement . . . she could not have been injured by [it]."). But the multiplicity of labels produced by Defendants shows that only four of the twenty different versions of Pringles labels contained that language during the class period.[4] Marotto estimates the class size to be "at a minimum, [] in the tens of thousands," Compl. ¶ 79, but he does not provide anything approaching a rigorous basis for this estimate; the class could be far larger.[5] These facts raise a host of thorny questions that Plaintiff has not endeavored to answer: How is the Court supposed to sift through tens of thousands of individuals to find the subset that has in fact seen the "No Artificial Flavors" label? If would-be class members claim to have seen the label but lack a receipt from their Pringles purchase, is the Court obligated to hold a hearing to evaluate each individual's credibility? Even if a would-be class member has a receipt proving a purchase of a Pringles can with the "No Artificial Flavors" label, is a hearing nonetheless needed to confirm that the class member in fact looked at the miniscule back-of-the-can lettering? Unwieldy individual issues clearly predominate.

---

[4] Plaintiff's conclusory statement in his brief that "[t]he class in the instant matter is composed of people who purchased the same product that was falsely labeled in the same way for all class members," ECF No. 39, at 6, is therefore demonstrably false.

[5] The proposed class definition includes "[a]ll persons who purchased Pringles . . . in the state of New York," without limiting this to residents of New York, or even the United States. *See* ECF No. 39, at 1. *See Weiner*, 2010 WL 3119452, at *12 ("The difficulty of managing a class of the size and scope proposed by the plaintiffs is self-evident. . . . Because the purported class is not limited to New York, or even United States, residents, it could potentially include millions of consumers from around the world.").

7

Second, the individualized inquiry into the extent to which—if at all—individual consumers were motivated by the "No Artificial Flavors" label to purchase Pringles, and/or to pay a premium price for Pringles, precludes a finding of predominance. This is not a matter of damages implicating individual determinations—as noted already, Marotto's surviving claims require either that a plaintiff is induced to make a purchase or injured as a result of having been induced to make said purchase, due to a merchant's false or misleading statement. Common sense dictates that a purchaser who does not care whether Pringles contain artificial flavors and instead is only interested in, *e.g.*, taste, cannot make out a claim for fraud, misrepresentation, or breach of express warranty. *See, e.g., Weiner*, 2010 WL 3119452, at *6 ("[P]laintiffs have not shown that they could prove . . . that putative class members in fact paid a premium for Snapple beverages as a result of the 'All Natural' labeling."); *id.* at *11 (it may be that consumers bought Snapple for its "taste, glass bottles, quirky advertising," etc.); *Marshall v. Hyundai Motor America*, --- F.R.D. ---, 2019 WL 2678023, at *16 (S.D.N.Y. June 14, 2019) ("[T]he court will be required to conduct individualized inquiries to determine whether class members suffered any injuries *at all*—a proposition that is much different than determining the quantum of damages for each class member."); *Oscar v. BMW of North America, LLC*, 2012 WL 2359964, at *4 ("It is impossible to determine, on a global basis, whether the presence of [a particular feature], as opposed to other standard equipment differentiating the [first car type] from the [second car type] 'caused' consumers to pay a higher sum for the [first car type].").

If the proposed class were certified, the Court would need to engage in fact-finding as to the inner workings of (at least) tens of thousands (and likely more) of consumers' minds. And ultimately, the Court would need some meaningful way of determining the interplay between the weight a class member placed on the "No Artificial Flavors" label and harm to that

8

class member.  Such a process would be as individualized as it is nonsensical.  All the more so because Plaintiff has of yet "offer[ed] no evidence that a price premium actually existed." *Ault*, 310 F.R.D. at 67.  In short, predominance is wholly lacking here.

### Conclusion

For the foregoing reasons, Plaintiff's motion for class certification is denied.  The parties are ordered to appear for a status conference on January 3, 2020, at 10:00 a.m., to chart further progress in this case.  The Clerk is directed to close the open motion (ECF No. 39).

SO ORDERED.

Dated:  December 5, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

9