## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MATTHEW MAROTTO, on behalf of himself, | : | |
| all others similarly situated, | : | |
| and the general public | : | NO. 1:18-cv-03545-AKH |
| | : | |
| v. | : | CLASS ACTION |
| | : | |
| KELLOGG COMPANY, et al. | : | Hon. Alvin K. Hellerstein |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE ORDER OF DECEMBER 5, 2019

John K. Weston
*jweston@sackslaw.com*
SACKS WESTON DIAMOND, LLC
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
(215) 925-8200

Derek T. Smith (DS1747)
*dtslaws@msn.com*
Alexander G. Cabeceiras (AM1520)
DEREK SMITH LAW GROUP, PLLC
*alexc@dereksmithlaw.com*
1 Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760

***Counsel for Plaintiff
and the Proposed Class***

# TABLE OF CONTENTS

**Table of contents**                                                                    i

**Table of authorities**                                                                 ii

**I.      BACKGROUND**                                                                   1

**II.     PROCEDURAL CONSIDERATIONS**                                                    3

**III.    THE ISSUES WHICH DID NOT RECEIVE
          FULL ADVERSARIAL TREATMENT**                                                   4

**IV.     KELLOGG HAS NOT SHOWN THAT MULTIPLE
          PRODUCT LABELS WERE SOLD IN NEW YORK
          DURING THE CLASS PERIOD**                                                      6

**V.      THERE IS NO RELIANCE REQUIREMENT.  PRICE
          PREMIUM CAN BE UNIFORMLY CALCULATED
          FOR THE ENTIRE CLASS**                                                         8

**VI.     MR. MAROTTO'S EXPERTIES MAKES HIM AN
          EXCELLENT CLASS REPRESENTATIVE**                                               11

**VII.    CERTIFICATION IS NOT DEPENDENT ON WHETHER
          EACH CLASS MEMBER READ THE "NO ARTIFICIAL
          FLAVORS" LANGUAGE.**                                                           13

**VIII.   KELLOGG CANNOT NOW RAISE A MERITS
          OBJECTION TO PLAINTIFF'S FRONT-OF-LABEL
          CLAIM, PARTICULARLY WHEN THE OBJECTION
          IS MERITLESS**                                                                 14

**IX.     CONCLUSION**                                                                   16

**EXHIBIT – WYER AFFIDAVIT OF DECEMBER 9, 2019**

# TABLE OF AUTHORITIES

## CASES

*Am. Civil Liberties Union v. Dep't of Def.*, No. 04 CIV. 4151 (AKH),
  2010 WL 308810 (S.D. N.Y. Jan. 26, 2010)           4

*Ault v. J.M. Smucker Co.*, 310 F.R.D. 59 (S.D. N.Y. 2015)      9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52
  (2d Cir. 2000)                      11

*Boule v. Hutton*, 328 F.3d 84 (2d Cir.2003)      9

*Brown v. Hain Celestial Grp.*, No. C 11–03082 LB,
  2014 WL 6483216 (N.D. CA. 2014)      10

*Chiste v. Hotels.com L.P.,* 756 F.Supp.2d 382 (S.D. N.Y.2010)    9

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir.2007)    9

*Comcast Corp. v. Behrend,* 569 U.S. 27, 133 S. Ct. 1426 (2013)    10

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S. Ct. 2454 (1978)    4

*Cordero v. Astrue*, 574 F.Supp.2d 373 (S.D. N.Y. 2008)    4

*Delgado v. Ocwen Loan Servicing, LLC*, 13-CV-4427
  (NGG) (RML), 2014 WL 4773991 (E.D. N.Y. Sept. 24, 2014)    12

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D. N.Y. 2014)    10,11

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA,
  2008 WL 4279550 (N.D. Cal. 2008)    13

*Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239 (E.D. N.Y. 2019)
*In re Dial Complete Mktg. & Sales Practices Litig.*,
  312 F.R.D. 36 (D. N.H. 2015)    7

*In re Petrobras Sec.*, 862 F.3d 250 (2ⁿᵈ Cir. 2017),
 *cert. den.* 140 S.Ct. 338 (2019)                                            11

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D. N.Y. 2015)                9,10

*Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83 (2d Cir. 2013)                 15

*Leonard v. Abbott Labs., Inc.*, No. 10-4676, 2012 WL 764199
 (E.D. N.Y. 2012)                                                            15

*Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017)                           3

*Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143
 (E.D. N.Y. 2010)                                                            4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
 85 N.Y.2d 20 (1995)                                                         12,15

*Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125 (S.D. N.Y. 2014)        9

*Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 698 N.Y.S.2d 615,
 720 N.E.2d 892 (1999)                                                       8

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
 No. 06 Civ. 14245 (LTS)(MHD), 2007 WL 1138879 (S.D. N.Y. 2007)              12

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
 350 F.3d 1181 (11th Cir. 2003)                                             13

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
 956 F.2d 1245 (2d Cir.1992)                                                4

*Werdebaugh v. Blue Diamond Growers*, No. 12–CV–2724–LHK,
 2014 WL 2191901 (N.D. CA. 2014)                                            10

*Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 893 N.Y.S.2d 208 (2010)         8,14

*Wurtzburger v. Kentucky Fried Chicken*, No. 16-CV-08186 (NSR),
 2017 WL 6416296 (S.D. N.Y. 2017)                                           12

**STATUTES**

28 USC §1292                                                3

NY CPLR 213                                                 2

NY General Business Law §349                                1,9,15

NY General Business Law §350                                1

**REGULATIONS**

21 CFR 101.22                                               7

**RULES**

FRCP 23                                                     3,10

FRCP 30                                                     6

Local Civil Rule 6.3                                        3

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MATTHEW MAROTTO, on behalf of himself, | : | |
| all others similarly situated, | : | |
| and the general public | : | NO. 1:18-cv-03545-AKH |
| | : | |
| v. | : | CLASS ACTION |
| | : | |
| KELLOGG COMPANY, et al. | : | Hon. Alvin K. Hellerstein |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE
## ORDER OF DECEMBER 5, 2019

### I.       BACKGROUND

This is a class action, brought by plaintiff Matthew Marotto on behalf of a class of purchasers of Pringles Salt & Vinegar potato crisps, which are produced and marketed by the Kellogg defendants.  Marotto alleges that the label of the product implies that the crisps contain real vinegar, when they do not;[1] and that, despite the product's label's promise that the crisps contain no artificial flavors, they do.[2]  The complaint seeks damages for deceptive acts and practices under NY General Business Law §349; for false advertising under NY General Business Law §350; for

---

[1] Complaint, ECF 1, Paragraphs 20-23.

[2] Complaint, ECF 1, Paragraphs 24-33.

negligent misrepresentation; for fraud under NY CPLR 213; for breach of express warranty; and for unjust enrichment.

By Order of November 29, 2018, the Court dismissed the complaint's count for breach of implied warranty, as well as the complaint's prayer for injunctive relief.[3]  Otherwise the complaint withstood the motion to dismiss.  The parties then conducted discovery limited to the class action allegations, and the plaintiff filed his motion for class certification on June 28, 2019.[4]  Kellogg's submitted its response on November 18, 2019.[5]  That response raised defenses which were not addressed in the motion for class certification.

It was at this point that matters broke down.  Plaintiff's reply brief, which was intended to address the issues first raised in Kellogg's answering brief, was due on December 17, 2019, as set forth in the Order of October 2, 2019, ECF 45.  Twelve days before the reply brief was due – and while the parties were continuing to conduct discovery on a central class certification issue - the Court issued its Order of December 5, denying Plaintiff's motion for class certification.[6]  The December 5

---

[3] ECF 29.

[4] ECF 39.

[5] ECF 48.

[6] ECF 50.

Order therefore was entered without benefit of full briefing on issues which the Court considered dispositive. This motion for reconsideration attempts to remedy that problem.

## II.   **PROCEDURAL CONSIDERATIONS**

Local Civil Rule 6.3 provides that a motion for reconsideration be filed within fourteen days of the order determining the original motion. This motion is timely filed within that period.

FRCP 23(f) permits a party to seek permission to appeal from an order denying class certification. Alternatively, 28 USC §1292(b) permits the Court to certify the December 5 order for interlocutory appeal. While both of these procedures are available in the present circumstances, Plaintiff believes it is more appropriate, and efficient, to seek the Court's reconsideration of its December 5 Order.

Under FRCP 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." A District Court may "reverse course and certify the proposed class," *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1711 (2017). "The Rule provides that an order involving class status may be 'altered or amended before the decision on the merits.' Thus, a district court's order denying

or granting class status is inherently tentative." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S. Ct. 2454, 2458, n. 11 (1978).

The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Montblanc-Simplo GmbH v. Colibri Corp*., 739 F. Supp. 2d 143, 147 (E.D. N.Y. 2010), citing *Cordero v. Astrue*, 574 F.Supp.2d 373, 379–80 (S.D. N.Y. 2008) and *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd*., 956 F.2d 1245, 1255 (2d Cir.1992). Full adversarial treatment of an important issue is crucial; "[v]itally important questions need to be briefed and argued." *Am. Civil Liberties Union v. Dep't of Def.*, No. 04 CIV. 4151 (AKH), 2010 WL 308810, at *1 (S.D. N.Y. Jan. 26, 2010).

## III.   THE ISSUES WHICH DID NOT RECEIVE FULL ADVERSARIAL TREATMENT

In denying class certification, the Court found two issues to be determinative. First, the Court found that the existence of multiple Pringles labels, some of which contained the "No Artificial Flavors" warranty and some of which did not, led to the conclusion that "[u]nwieldy individual issues clearly predominate."[7] Second, the Court perceived that class members would have to prove reliance on Kellogg's

---

[7] Order of December 5, 2019, ECF 50, at *7.

misrepresentations, and/or that each class member would have to provide an individualized price premium calculation. These conclusions led the Court to find that common issues did not predominate.[8]

In addition, while the Court's decision was not based on a finding that Mr. Marotto was atypical and/or inadequate as a class representative, the Court suggested that Marotto's culinary expertise might make him atypical, and his relationship to class counsel might make him inadequate.[9]

Finally, Kellogg's answering brief raised one issue, only tangentially mentioned in the Court's opinion, as to the necessity of proof that each class member actually read the "No Artificial Flavors" language on the product label; and a second issue, not part of the Court's Order, regarding the viability of Plaintiff's failure-to-disclose-vinegar-substitute claim.

None of these issues was addressed by a reply brief. All of them are addressed here. When resolved, each of the issues actually supports certification of this class.

---

[8] Order of December 5, 2019, ECF 50, at *8-9.

[9] Order of December 5, 2019, ECF 50, at *6.

## IV.   KELLOGG HAS NOT SHOWN THAT MULTIPLE PRODUCT LABELS WERE SOLD IN NEW YORK DURING THE CLASS PERIOD.

As mentioned above, the parties were conducting class discovery at the moment the Court issued its December 5 Order.  Rather than conduct a Rule 30(b)(6) corporate designee deposition, the parties agreed that Kellogg could submit an affidavit addressing the pertinent topics.  That affidavit was provided to Plaintiff on December 9, 2019 – four days after the Court's Order, and eight days before Plaintiff's reply brief was due.  It is the affidavit of Zach Wyer, Senior Brand Manager at Kellogg, and it is attached to this motion.  In the affidavit Mr. Wyer relates that Kellogg cannot identify the number of packages of Salt & Vinegar Pringles which were sold in any particular version of a label.[10]  Mr. Wyer does not – cannot – claim that *any* of the labels which lacked the "No Artificial Flavors" language were sold in New York during the class period.  This is not a contradiction of Mr. Smith's declaration,[11] upon which the Court relied.[12]  Mr. Smith asserted only that Kellogg produced twenty labeling proofs during the class period.[13]  Mr. Smith

---

[10] Wyer affidavit, paragraphs 3-4.

[11] ECF 49.

[12] Order of December 5, 2019, ECF 50, at *2.

[13] ECF 49, at paragraphs 2-4.

did not assert that any of these labels were on Pringles packages which were actually sold in New York during the class period. Taken together, Mr. Smith and Mr. Wyer can show no more than the existence of twenty label design proofs. This is far from demonstrating that twenty label designs were ever printed, pasted, and sold on Pringles in New York. That is simple speculation on Kellogg's part. The Court is left with the complaint's allegations that all of the product sold in New York contained the offending language.[14]

Moreover, *all* of the 20 label proofs submitted by Mr. Smith show a depiction of real vinegar on the front of the label, and none of them complies with the legal requirement to disclose that the crisps contain additional flavoring ingredients that overwhelm the flavor of the small amount of actual vinegar in the seasoning; 21 CFR 101.22.[15] Neither the Smith declaration nor the Wyer affidavit confronts this failure. The Court's December 5 Order focused on the "No Artificial Flavors" language on the back of the label, and did not address Kellogg's failure to disclose the lack of

---

[14] For class certification purposes, it would be enough if most of the labels contained the "No Artificial Flavors" language. "The fact that the same label did not appear on every single product of GSG that a consumer may have purchased, does not mean that the deceptive act would not still have likely deceived a consumer, given that the labels were both abundant, accompanied by advertising campaigns, and appeared prominently on shelves where consumers shopped." *Hasemann v. Gerber Prod. Co*., 331 F.R.D. 239, 264 (E.D. N.Y. 2019).

[15] See paragraphs 23 and 42-49 of the complaint, ECF1.

real vinegar on the front of the label.  *All* purchasers were exposed to this mis-labeling.

In sum:  There is no evidence that labels missing the "No Artificial Flavors" language appeared on New York Pringles Salt & Vinegar crisps during the class period.  There is uniform evidence that all of those packages lacked a disclaimer regarding the vinegar substitute.  Consequently the labeling issue does not defeat preponderance.

## V.    THERE IS NO RELIANCE REQUIREMENT.   PRICE PREMIUM CAN BE UNIFORMLY CALCULATED FOR THE ENTIRE CLASS.

The Court was concerned that "the individualized inquiry into the extent to which individual consumers were motivated by the "No Artificial Flavors" label to purchase Pringles, and/or to pay a premium price for Pringles, precludes a finding of predominance."[16]  This concern is readily answered.

First, at trial there is no individualized inquiry into consumer motivation, at least under the New York statutes.  "'Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim' (*Small v. Lorillard Tobacco Co*., 94 N.Y.2d at 55, 698 N.Y.S.2d 615, 720 N.E.2d 892)."  *Wilner v. Allstate Ins. Co*., 71 A.D.3d 155, 162, 893 N.Y.S.2d 208, 214 (2010).

---

[16] Order of December 5, 2019, ECF 50, at *8.

A claim under § 349 "has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir.2007).  ***An act is "misleading" if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances***." *Id.* (citation omitted).  A plaintiff need not prove a defendant's intent to deceive, *Chiste v. Hotels.com L.P.*, 756 F.Supp.2d 382, 403–04 (S.D. N.Y.2010), ***nor must a plaintiff show reliance*** on the misleading act or practice. See *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir.2003). ***In demonstrating that she "sustained injury as a result" of defendant's action, the plaintiff must merely show that she suffered a loss "because of" the defendant's "deceptive act***." *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D. N.Y. 2014) (citation omitted).[17]

The inquiry, therefore, is an objective one.  The test is not whether each individual class member actually relied upon the misleading language, but whether a reasonable consumer would have done so.  This is a jury question.

Assuming that a reasonable consumer would have been misled, then ***all*** consumers sustained the loss of the price premium, *i.e.* the difference between what Pringles should have cost and what they did cost.  This is generally an expert calculation, utilizing one or more of three statistical methods (hedonic regression, a contingent valuation study, or a conjoint analysis); see, *e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413 (S.D. N.Y. 2015).  The calculation can account for product features other than the misleading statements; *id.*  Once calculated, the loss has been sustained by every class member, each of whom has paid too much for the

---

[17] *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 63 (S.D.N.Y. 2015).  Emphasis added.

product.[18]   While the expert's conclusions may be (and undoubtedly will be) challenged at a *Daubert* hearing, those conclusions are not required at class certification; see *In re Scotts EZ Seed Litig.*, *supra*., at 304 F.R.D. 414.[19]

Footnote 5 of the December 5 Order reflected the Court's concern that this case is unmanageable because the class includes consumers who are not necessarily New York residents.   As a practical matter, this is not a problem.   Mr. Wyer's affidavit included a submission of how many units of Pringles Salt & Vinegar crisps

---

[18] See, *e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 569 (S.D. N.Y. 2014) ("Plaintiffs further assert, and the Court again agrees, that the common actual injury consisted of the payment of the price of olive oil for a product that was pomace oil and the associated receipt of an inferior product different from that which the consumers purchased"); *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 75 (D. N.H. 2015) ("If Dial Complete is not, in fact, more effective than other liquid hand soaps, than the 'common actual injury consisted of the payment of the price' for a product that did not provide the benefits it promised, and 'the associated receipt of an inferior product different from that which the consumers purchased.' *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 569").

[19] "Defendants further argue the price premium damages model is inappropriate because Dr. Weir has not yet calculated a price premium associated with the 50% thicker claim, and, therefore, cannot prove such a premium exists at all.   However, ***nothing in Comcast [Corp. v. Behrend, 569 U.S. 27, 133 S. Ct. 1426 (2013)] requires an expert to perform his analyses at the class certification stage***.   See, *e.g., Brown v. Hain Celestial Grp.*, 2014 WL 6483216, at *19 ("The point for Rule 23 purposes is to determine whether there is an acceptable class-wide [damages] approach, not to actually calculate under that approach before liability is established."); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *25 ("Because *Comcast* did not articulate any requirement that a damage calculation be performed at the class certification stage, that [plaintiffs' expert] has yet to actually run the regressions and provide results is not fatal." (internal quotation marks omitted))."   Emphasis added.

10

were sold in New York during the class period, and the revenue Kellogg received from those sales.  Class notice, calculated to reasonably reach all class members, will solicit their participation, regardless of where they reside.  Class administrators are accustomed to dealing with large class recoveries; the *Vioxx, Diet Drug*, and *Deepwater Horizon* cases are recent examples.  The Second Circuit has pronounced that failure to certify a class on the sole ground that it would be unmanageable is disfavored; *In re Petrobras Sec.*, 862 F.3d 250, 264 (2nd Cir. 2017), *cert. den.* 140 S.Ct. 338 (2019), and has rejected administrative feasibility and ascertainabiliy as grounds for denying certification; *id*.

## VI.    MR. MAROTTO'S EXPERTISE MAKES HIM AN EXCELLENT CLASS REPRESENTATIVE.

While the December 5 Order expressly did not find that Mr. Marotto was either atypical or inadequate, the Court did raise those concerns, and they will be addressed here.

First, the standard for class representative adequacy:

"Generally, adequacy of representation entails an inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*., 222 F.3d 52, 60 (2d Cir.2000).[20]

---

[20] *Ebin v. Kangadis Food Inc*., *supra.*, at 297 F.R.D. 566.

Kellogg makes the remarkable - perhaps unique - argument that Mr. Marotto is over-qualified as a class representative. His culinary expertise, so the argument goes, may super-sensitize him to artificial ingredients, so that he might be offended by Pringles' chemical ingredients when "normal" class members would not. This does not support a conclusion that Marotto's interests are *antagonistic* to other class members'. Indeed, it suggests that he will more aggressively advance those interests than a representative who was less concerned with artificial ingredients. Moreover, the question of whether a reasonable consumer would have been misled by Kellogg's misrepresentations is an objective inquiry, independent of Mr. Marotto's personal feelings, and a question for trial. *Wurtzburger v. Kentucky Fried Chicken*, No. 16-CV-08186 (NSR), 2017 WL 6416296, at *3 (S.D. N.Y. Dec. 13, 2017).[21] The question for class certification is whether Mr. Marotto is antagonistic to the class, and it is clear that he is not.

---

[21] "The New York Court of Appeals established an objective standard for determining whether acts or practices are materially deceptive or misleading "to a reasonable consumer acting reasonably under the circumstances." *Oswego* [*Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741 (1995)], 85 N.Y.2d at 26. Courts "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Delgado v. Ocwen Loan Servicing, LLC*, 13-CV-4427 (NGG) (RML), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) (citation and quotation marks omitted). "The entire mosaic" is "viewed rather than each tile separately." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2007 WL 1138879, at *4 (S.D. N.Y. Apr. 16, 2007) (citation omitted)."

As to his marriage: While Kellogg has raised an ugly insinuation, it has provided no evidence that Mr. Marotto's marriage to a lawyer has affected – or is likely to affect – his pursuit of this case in any manner. See, *e.g.*, *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2008 WL 4279550, at *16 (N.D. Cal. Sept. 11, 2008).[22]

## VII. CERTIFICATION IS NOT DEPENDENT ON WHETHER EACH CLASS MEMBER READ THE "NO ARTIFICIAL FLAVORS" LANGUAGE.

While it was not part of the Court's December 5 Order, Plaintiff's reply brief would have responded to Kellogg's argument that certification is dependent on proof that each class member actually read the "No Artificial Flavors" label language.[23] As set forth above, individual reliance is not an element of the New York consumer

---

[22] "Defendant next contends that Smith should be disqualified because he is the husband of the long-time assistant to plaintiffs' counsel, Attorney Richard McCune. There is no evidence, however, on this record that either Smith or his wife would profit (other than Smith's class share) from any verdict or settlement. Indeed, both Smith and his counsel have the same incentive to obtain the highest possible settlement or verdict for the class. It is in both their interests to do so. The possibility that Smith would somehow approve a low settlement with an unjustifiable amount of attorney's fees is simply too attenuated to be credited at this stage. "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)."

[23] See Kellogg's brief, ECF 48, at pages 8-9.

statutes.  "Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim;" *Wilner v. Allstate Ins. Co.*, *supra*.  Moreover, Kellogg can hardly claim that consumers were not expected to read that warranty.  Kellogg placed it on the label, presumably in order to increase sales of its product.  Kellogg cannot reap the benefits of the label, while simultaneously disclaiming its effect.

## VIII. KELLOGG CANNOT NOW RAISE A MERITS OBJECTION TO PLAINTIFF'S FRONT-OF-LABEL CLAIM, PARTICULARLY WHEN THE OBJECTION IS MERITLESS.

Kellogg devotes a portion of its brief to an argument it made, and lost, before. It argues that Plaintiff's failure-to-disclose claim – the claim based on the fact that the ***front*** of the label shows real vinegar, but the product contains a vinegar-substitute chemical – cannot be the basis of this class action.[24]  Kellogg claims that (a) the class representative did not emphasize this as his reason for bringing the case, and that (b) Kellogg did not possess unique knowledge of the actual ingredients.

Kellogg raised this argument in its motion to dismiss, ECF 22, at pages 7-8. The Court rejected the argument in its order overruling that motion, ECF 29 at *16. The argument therefore has been settled for purposes of this case.

---

[24] See Kellogg's brief, ECF 48, at pages 10-12.

Beyond that, Kellogg's own recitation of New York's standard reveals the infirmity of the argument.

> Under New York law, "a failure to disclose . . . claim only arises when a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty." *Leonard v. Abbott Labs., Inc.*, No. 10-4676, 2012 WL 764199, at \*23 (E.D. N.Y. Mar. 5, 2012) (citation and internal quotation marks omitted). Thus, "[w]here a claim alleges an omission, a Section 349(a) claim stands only 'where [the] business alone possesses material information that is relevant to the consumer and fails to provide this information.'" *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 85 (2d Cir. 2013) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).[25]

The complaint describes how vinegar legally is a "characterizing flavor" because it is depicted on the front of the label, and, consequently, how Kellogg was required to disclose the artificial flavors, in such a manner "as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."[26]   Ordinary people may not be expected to know that sodium diacetate and malic acid taste like vinegar.  Kellogg alone possessed that information.  The argument was lost once, and should be lost again.

---

[25] Kellogg's brief, ECF 48, at page 11.

[26] Complaint, ECF1, at paragraphs 42-50.

## IX.   **CONCLUSION**

Plaintiff respectfully requests this Court to vacate its Order of December 5, 2019, which was entered without benefit of full briefing.  Plaintiff further requests that the Court grant class certification, which is warranted under the circumstances of this case.

Respectfully submitted:

/s/ John K. Weston_____

John K. Weston
*jweston@sackslaw.com*
SACKS WESTON DIAMOND, LLC
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
(215) 925-8200

Derek T. Smith (DS1747)
*dtslaws@msn.com*
Alexander G. Cabeceiras (AM1520)
DEREK SMITH LAW GROUP, PLLC
*alexc@dereksmithlaw.com*
1 Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760

***Counsel for Plaintiff
and the Proposed Class***

## <u>CERTIFICATE OF SERVICE</u>

JOHN K. WESTON, attorney for Plaintiff, hereby certifies that he caused true and correct copies of the foregoing Motion for Reconsideration and supporting documents to be served on the following date and to the following individuals by Electronic Court Filing (ECF):

> Dean N. Panos (pro hac vice)
> dpanos@jenner.com
> 353 N. Clark Street
> Chicago, IL 60654
> Tel.: (312) 222-9350
> Fax: (312) 527-0484
>
> Elizabeth A. Edmondson (N.Y. Reg. 4705539)
> eedmondson@jenner.com
> 919 Third Avenue
> New York, NY 10022
> Tel.: (212) 891-1600
> Fax: (212) 891-1699
>
> Alexander M. Smith (pro hac vice)
> asmith@jenner.com
> 633 West 5th Street
> Los Angeles, CA 90071
> Tel: (213) 239-5100
> Fax: (213) 239-5199
>
> Attorneys for Defendants

Dated:  December 19, 2019          /s/ John K. Weston_____

                                   John K. Weston