USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/31/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
MATTHEW MAROTTO on behalf of himself, all
others similarly situated, and the general public,

                                Plaintiff,

-against-

KELLOGG COMPANY, KELLOGG USA INC.,
KELLOGG SALES COMPANY, PRINGLES
LLC, and PRINGLES MANUFACTURING CO.,

                                Defendants.
------------------------------------------------------------- X

**ORDER DENYING MOTION FOR RECONSIDERATION**

18 Civ. 3545 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Matthew Marotto moves for reconsideration of an order of this Court denying Plaintiff's motion to certify a class of all post-April 1, 2012 purchasers of Pringles Salt and Vinegar crisps ("Pringles") bringing claims, under various causes of action, against makers and marketers of Pringles for allegedly labeling Pringles cans in a misleading fashion. *See* Order Denying Class Cert. (Dec. 5, 2019), ECF No. 50; ECF No. 53 (motion for reconsideration). The facts and procedural history in this matter are set forth in my order denying class certification, so familiarity therewith is assumed. Plaintiff's instant motion provides no persuasive basis for the Court to revisit denial of class certification. Reconsideration is denied.

### Discussion

A. "Full Adversarial Treatment"

        Plaintiff first contends that his class certification motion did not receive "full adversarial treatment," Pl. Mem., ECF No. 53, at 4, because I denied the motion after reviewing the opening and opposition briefing, but before Plaintiff had filed a reply. This contention lacks merit. Plaintiff cites no authority mandating that courts wait for a reply. And, in any event, for the reasons that follow, Plaintiff has not introduced any argument or fact by way of his briefing

on this motion for reconsideration that disavows the Court of its conclusion that denial of class certification was (and is) proper.

B. <u>Variation in Pringles labeling</u>

Plaintiff next contends that because Defendants do not have precise data on the exact number of Pringles cans that were sold, broken down by each of the twenty different labels used at the relevant time, Defendants cannot prove that *any* label sold in New York lacked the "No Artificial Flavors" text. *See id.* at 6-7. But this contention gets it backwards. The party that *seeks* class certification has the burden of demonstrating Rule 23 compliance—not vice versa. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must *affirmatively demonstrate* his compliance with the Rule—that is, he must be prepared to prove [its compliance].") (emphasis added); *Johnson v. Nextel Comms., Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("The party seeking class certification *bears the burden* of establishing by a preponderance of the evidence . . . each of Rule 23's requirements.") (emphasis added). The record contains evidence that Defendants released twenty different Pringles labels during the putative class period, *see, e.g.,* ECF No. 49, at ¶ 2, only four of which contain the offending "No Artificial Flavors" text. This supports the strong inference that many if not most of the proposed class members would not even had seen the allegedly problematic label. *See, e.g., Goldemberg v. Johnson & Johnson*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016); *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 65 (S.D.N.Y. 2015) (noting that the "Defendant sells nine different brands of cooking oil, only four of which ever bore the 'All Natural' label"). The Court is not obligated to subscribe to Plaintiff's conclusory assertion that "all of the [Pringles] sold in New York contained the offending language." *See* Pl. Mem. at 7.

2

Plaintiff's cited authority does not require a different result. Plaintiff points to *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239 (E.D.N.Y. 2019) for the claim that it is "enough if most of the labels contained the 'No Artificial Flavors' Language." Pl. Mem. at 7 n.14. For one thing, most of the labels here do *not* contain the text. For another, *Hasemann*, which applied Florida law, declined to require "total uniformity" in labeling because the labels there were "accompanied by advertising campaigns, and appeared prominently on shelves where consumers shopped," 331 F.R.D. at 264—that is quite different from this case, in which there is no evidence of inflammatory advertising or prominent shelf-displays. Indeed, the microscopic text appears on the back of only 20% of released labels. *Compare Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014) ("Here, every class member saw the same representation . . . because the statement appeared in large letters on the front, back, left, right, and top of the tin.").

Plaintiff also cites a number of cases for the proposition that, "[w]here the facts with regard to an issue lie peculiarly in the knowledge of a party, that party is best situated to bear the burden of proof." Pl. Mem. at 2-3 (quotation marks omitted). Not a one of Plaintiff's cited cases took place in the context of a motion for class certification—several, for example, involved criminal prosecutions, *see id.* at 2-3, 3 n.5—and Plaintiff gives no reason to splice this common law principle with the doctrine in the Supreme Court and Second Circuit squarely placing the burden at class certification on the movant.[1] Regardless, the only information "peculiarly in the knowledge of" Defendants is the fact that only four of twenty Pringles labels

---

[1] Delving deeper into one of Plaintiff's cited cases is instructive. Plaintiff cites to *Dixon v. United States*, 548 U.S. 1, 9 (2006), a criminal case which refers to "the doctrine that 'where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue.'" That quotation, in turn, quotes from a treatise on evidence law. The treatise, which makes no mention of class actions, cautions that this "often repeated" doctrine "*should not be overemphasized,*" as "[v]ery often one must plead and prove matters as to which his adversary has superior access to the proof." 2 McCormick on Evidence § 337 (8th ed. 2020) (emphasis added).

3

contain the offending text, which information has been disclosed by Defendants and evaluated by this Court in denying certification.

### C. Reliance versus causation

Plaintiff next argues that, under the New York deceptive business practices statute, the "test is not whether each individual class member actually relied upon the misleading language, but whether a reasonable consumer would have done so." Pl. Mem. at 9. As Plaintiff would have it, the absence of a statutory reliance requirement eliminates the need for analyzing "consumer motivation" for purchasing Pringles. *Id.* at 8. Plaintiff confuses reliance, which is not required under the New York statutes, with causation and injury, which are required:

> A private action brought under [the New York deceptive business practices statute] does not require proof of actual reliance. The plaintiff, however, must show that the defendant's material deceptive act caused the injury. In addition, a plaintiff must prove actual injury to recover under the statute.

*Weiner v. Snapple Beverage Corp.*, No. 07-cv-8742, 2010 WL 3119452, at *5 (S.D.N.Y. Aug. 5, 2010) (quotation marks omitted) (denying certification). A case cited in Plaintiff's brief, *Ault*, 310 F.R.D., illustrates the point. In *Ault*, plaintiff sought to certify a class of consumers deceived by an "All Natural" label on cooking oils. *Id.* at 62-63. The court noted that New York law does not require "reliance on the misleading act." *Id.* at 63. However, the court did not reach the question of whether a reasonable consumer would be misled by the label, because it found that plaintiff failed to "demonstrate an adequate method for determining whether potential class members were *injured* by Defendant's conduct." *Id.* at 67 (emphasis added).

This principle controls here. Plaintiff has provided no evidence that a price premium exists based on the alleged misrepresentations, and has not posited a methodology for determining the amount of a would-be premium. *See id.* ("Plaintiff offers no evidence that price premium actually existed for cooking oils labeled 'All Natural.'"); *Weiner*, 2010 WL 3119452, at

4

\*6 ("Without a reliable methodology, plaintiffs have not shown that they could prove at trial using common evidence that putative class members in fact paid a premium . . .").[2]

### D. Unmanageability of the class

Plaintiff asserts in passing that denying class certification on the "sole ground that it would be unmanageable is disfavored." Pl. Mem. at 11. True, but not relevant. I noted in my order denying class certification the unmanageability of the class (an unmanageability that the Plaintiff does not seem to meaningfully dispute in its current round of briefing) as one of many factors calling for denial of class certification. *See* Order Denying Class Cert. at 7 n.5. This was consistent with Second Circuit precedent. *See, e.g., Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("[W]hether the court is likely to face difficulties managing a class action bears on whether the proposed class satisfies the predominance and superiority requirements.").

### E. The vinegar depiction

Last, Plaintiff argues that the class should have been certified on the basis of a "depiction of real vinegar on the front of the [Pringles] label." Pl. Mem. at 7. Plaintiff urges that this is misleading because despite the "picture[] of real vinegar," the "flavor was artificial." Pl. Reply Mem., ECF No. 55, at 4. This argument is unsustainable for several reasons. First, to the extent Plaintiff attempts to support it on Defendant's purported violation of federal food-labeling regulations, *see, e.g.,* Compl., ECF No. 1, at ¶¶ 42-49, this Circuit has rejected attempts to locate a private right of action in the Food and Drug Administration's labeling regulations. *See, e.g.,*

---

[2] Tellingly, several of the cases cited by Plaintiff as approving class certification, involved plaintiffs that *did* propose a methodology for calculating price premium. *See, e.g., Ebin*, 297 F.R.D. at 571 (plaintiff's expert "detail[ed] several models for calculating damages for th[e] alleged misrepresentation"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 n.7 (S.D.N.Y. 2015) ("[P]laintiffs have proposed suitable damages methodologies for establishing injury on a classwide basis."); *compare, e.g., Weiner*, 2010 WL 3119452, at \*9 (finding it insufficient proof of a suitable method where plaintiffs "d[id] nothing more than identify two possible approaches and assert that they will work in this case"); *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at \*20 (E.D.N.Y. July 18, 2013) (collecting cases).

5

*Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd* 432 F. App'x 29 (2d Cir. 2011); *see also Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (refusing to allow a party to "circumvent the lack of a private right of action for violation" of federal law through N.Y. Gen. Bus. L. § 349). Next, Plaintiff's claim that the "depiction of real vinegar" was misleading because other ingredients "overwhelm the flavor of the small amount of actual vinegar in the seasoning" not only concedes the presence of actual vinegar in Pringles, but (a) relies on the untenable premise that Defendants needed to disclose that "sodium diacetate and malic acid taste like vinegar," Pl. Mem. at 15, when in fact Defendants were only obliged under New York law to disclose that these ingredients were used in Pringles (which they undisputedly did), *see, e.g., Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (explaining that theories of "omissions" under N.Y. Gen. Bus. L. § 349 require that the "business *alone* possesses" the information), and (b) rests on the unsupported assumption that consumers would infer from a sketch of a vinegar bottle on the Pringles can that *only* vinegar was used and then proceed to place a price premium on the chips, *see, e.g., Marshall v. Hyundai Motor America*, --- F.R.D. ---, 2019 WL 2678023, at *16 (S.D.N.Y. June 14, 2019) ("'We do expect the common evidence to show all class members suffered some injury.'") (alterations omitted) (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015)).[3] This was not enough to support class certification.[4]

---

[3] I note also that the Pringles label pictured in the Complaint, *see* ECF No. 1, at ¶ 19, openly describes the potato crisps only as vinegar "flavored," further weakening the case that any reasonable customer, let alone a class of such customers, would be deceived into thinking that vinegar was the exclusive ingredient used. *See, e.g., Jessani v. Monini*, 744 F. App'x 18, 19 (2d Cir. 2018) (affirming finding that the "consuming public acting reasonably" would not think olive oil self-described as being "Truffle-Flavored" contained real truffles).

[4] I expressed doubt's in my denial of class certification that Plaintiff could meet the typicality or adequacy prongs of the Rule 23 analysis. *See* Order Denying Class Cert. at 6. I explained that I did not need to reach those arguments given the clear lack of predominance. *See id.* In his motion for reconsideration, Plaintiff revisits this issue to argue that neither Plaintiff's "culinary expertise" nor the fact that Plaintiff alleges to have been notified of Pringles having

6

**Conclusion**

For the foregoing reasons, Plaintiff's motion for reconsideration is denied. The Clerk is accordingly directed to close the open motion (ECF No. 53).

SO ORDERED.

Dated:  January 31, 2020
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

---

artificial flavors by his wife—a lawyer at a firm seeking to represent the putative class—expose him to unique defenses that render him atypical or inadequate. *See* Pl. Mem. at 12-13. To this I briefly say: nonsense. Surely the fact that Plaintiff testified at length to his advanced training in food chemistry makes him especially vulnerable to a defense that Plaintiff himself was not fooled by the "No Artificial Flavors" label; and just as surely the fact that Plaintiff testified that he only noticed the label at the behest of his wife who now seeks to represent the putative class supports a similar inference that Plaintiff was motivated to sue by his wife's financial motive and not by his being duped by Pringles' labeling. *See, e.g., Brown v. Kelly*, 609 F.3d 467, 480 (2d Cir. 2010) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.") (quotation marks omitted); *Beck v. Status Game Corp.*, No. 89-cv-2923, 1995 WL 422067, at *4 (S.D.N.Y. July 14, 1995) ("[I]t does not matter whether a unique defense ultimately will prove meritorious because the fact remains that Goldberg will be required to devote considerable time to rebut the unique defense.") (quotation marks omitted); *compare Gutierrez v. Wells Fargo Bank, N.A.*, No. C07-05923, 2008 WL 4279550, at *16 (N.D. Cal. Sept. 11, 2008) (cited at Pl. Mem. at 13) ("There is no evidence, however, on this record that either Smith or his wife [(an *assistant* to class counsel)] would profit (other than Smith's class share) from any verdict or settlement.").